JIM BROWN CHEVROLET, INC., d.b.a. Classic Chevrolet, et al., Appellants,

v.

S.R. SNODGRASS, A.C., et al., Appellees.

[Cite as *Jim Brown Chevrolet, Inc. v. S.R. Snodgrass,*
*A.C.* (2001), 141 Ohio App.3d 583.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2000–L–036.

Decided March 26, 2001.

*Kenneth J. Fisher Co., L.P.A.,* and *Kenneth J. Fisher,* for appellants.

*Nicola, Gudbranson & Cooper, L.L.C.,* and *Richard G. Witkowski,* for appellees.

FORD, Presiding Judge.

This is an appeal from the Lake County Court of Common Pleas. Appellants, Jim Brown Chevrolet, Inc., d.b.a. Classic Chevrolet; Classic Oldsmobile, Inc., d.b.a. Classic Oldsmobile; and Jim Brown, Inc., d.b.a. Classic Cadillac, appeal the trial court's judgment entry dated February 2, 2000.

On July 28, 1999, appellants filed a complaint against appellees, S.R. Snodgrass, A.C. ("Snodgrass") and Robert L. Lewis, Jr. ("Lewis"), alleging accounting negligence. Appellee Snodgrass is an accounting firm, and appellee Lewis is an accountant employed by the firm. Appellees filed an answer to the complaint on September 16, 1999. Thereafter, on December 3, 1999, appellees moved for summary judgment on the grounds that appellants' claims were barred by the four-year statute of limitations contained in R.C. 2305.09. Appellants submitted their brief in opposition to the motion on January 25, 2000.

The record reveals that appellees provided accounting services to appellants from 1979 through March 1998. Appellants elected the LIFO (last in first out) inventory method for tax purposes.[1] In 1997, the Internal Revenue Service ("IRS") issued a revenue ruling and a revenue procedure between itself and the National Automobile Dealers Association ("NADA"). The IRS provided terms and conditions by which car dealerships that had violated the LIFO reporting requirements from 1991 to 1996 could pay a penalty in lieu of having their LIFO election terminated. Specifically, a car dealer was permitted to perform a self-audit and, if a violation was found, the dealership could pay a penalty of 4.7 percent of the total LIFO tax deferral.

Pursuant to the settlement, appellants conducted self-audits in May 1998. During the audits, appellants discovered that they had violated this consistency requirement and owed the IRS substantial penalties. Appellants found that these violations had occurred in 1991 and 1992. Subsequently, appellants terminated their relationship with appellees in 1998. They filed a complaint claiming that appellees failed to advise them that LIFO inventory valuations were required in their annual financial reports to the company that was providing them with financing, and, as a result, they incurred considerable penalties. Appellants sought to recover the monies from appellees on a claim of accounting negligence.

On February 2, 2000, the trial court granted appellees' motion for summary judgment because appellants' "complaint was filed on July 28, 1999, more than four years after the occurrence of the most recent of the alleged negligent acts (1992). As such, [appellants'] claims are barred by the four-year statute of limitations in R.C. 2305.09(D)." Appellants timely filed the instant appeal and now assert the following as error:

"The trial court erred as a matter of law in ruling appellants' cause of action arose in 1991 and 1992, when appellants did not sustain monetary damages until 1997."

In their lone assignment of error, appellants challenge the trial court's decision to grant summary judgment in appellees' favor on the basis that the statute of limitations on their claim had expired. Specifically, appellants claim that the trial court erred in determining when a cause of action accrues for accountant negligence.

Summary judgment is appropriate only when it has been established (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come

---

1. LIFO inventory valuations allow automobile dealerships to defer income and the payment of taxes by placing a lower, older historical value on inventory.

to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C).

■ Appellate courts review a trial court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157. The *Brown* court stated that "[w]e review the judgment independently and without deference to the trial court's determination." *Id.* An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. *Id.*

■ Appellants' sole contention is that the limitation period began to run when they suffered monetary damages in 1997, and can be characterized as a "delayed damages" theory.

R.C. 2305.09 states that general negligence, pertaining to claims against accountants, shall be brought within four years after the cause has happened. In *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph one of the syllabus, the Supreme Court of Ohio held:

" * * * Claims of accountant negligence are governed by the four-year statute of limitations for general negligence claims found in R.C. 2305.09(D), not by the two-year period for bodily injury or injury to personal property set forth in R.C. 2305.10, or by the one-year limitations period for professional malpractice claims in R.C. 2305.11(A)."

We note that the termination rule, which was developed in regard to medical malpractice claims, provides that a cause of action does not accrue until the termination of the medical relationship between the patient and the physician. *Beechler v. Touche Ross & Co.* (1992), 81 Ohio App.3d 354, 357, 611 N.E.2d 333, 334–335. The termination rule also applies to causes of action for legal malpractice. *Id.* at 358, 611 N.E.2d at 335–336. However, many cases "which have considered the statute of limitations for accountant negligence have universally declined to apply the termination rule." *Id.* Instead, cases relating to accountant negligence have held that " '[a] cause of action for negligence accrues when the negligent act is committed.' " *Id.,* 81 Ohio App.3d at 358, 611 N.E.2d at 335, quoting *Richard v. Staehle* (1980), 70 Ohio App.2d 93, 97, 24 O.O.3d 121, 123, 434 N.E.2d 1379, 1383.

The Supreme Court further held that "[t]he discovery rule is not available to claims of professional negligence brought against accountants." *Investors REIT,* at paragraph two of syllabus. The Supreme Court reasoned that "[t]he General Assembly has not adopted a discovery rule applicable to general negligence claims arising under R.C. 2305.09. This court will not interpret R.C. 2305.09 to

include a discovery rule for professional negligence claims against accountants arising under R.C. 2305.09 absent legislative action on the matter." *Id.* at 182, 546 N.E.2d at 212.

In addition, we note that in another case pertaining to accountants, *Rihm v. Wade* (Dec. 10, 1999), Montgomery App. No. 17802, unreported, at 4, 1999 WL 1127403, the Second District Court of Appeals stated that "the delayed occurrence of damages rule has been rejected by a number of courts." Further, the concurring opinion in *Rihm* states, and we agree:

"The 'delayed damages' rule attempts to address the anomaly of the result reached in [*Investors REIT* ], but is itself flawed. It appears to be no more than the discovery rule in different garb. More importantly, and like [*Investors REIT* ], it identifies the negligent act as the event which commences running of the limitations period. However, no claim for relief may lie on the negligent act alone. In order for a right of action on the claim to accrue, and the limitation period to commence, an actionable injury must occur." *Id.* at *5.

The Supreme Court, in *Grant Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 566 N.E.2d 1220, reevaluated and reaffirmed its holding in *Investors REIT* by stating that R.C. 2305.09(D) applies to accountant malpractice actions and that the discovery rule is not applicable to accountant malpractice actions. *Id.* at 160, 566 N.E.2d at 1222–1223; see, also, *Smith v. Rudler* (Aug. 13, 1993), Ashtabula App. No. 92–A–1753, unreported, at 2, fn. 1, 1993 WL 318797.

Furthermore, this court has held that "[a] claim for breach of fiduciary duty, * * * accrues when the claimant's interest is impaired by such a breach. In addition, the discovery rule in R.C. 2305.09(D) does not apply to toll the statute of limitations for claims arising out of a breach of fiduciary duty." *Stokes v. Berick* (Dec. 23, 1999), Lake App. No. 98–L–094, unreported, at 5, 1999 WL 1313668, citing *Herbert v. Banc One Brokerage Corp.* (1994), 93 Ohio App.3d 271, 275, 638 N.E.2d 161, 164.

In the instant matter, the evidence reveals that appellants filed their initial complaint on July 28, 1999. Thus, pursuant to the foregoing cases, any act or omission constituting a breach of fiduciary duty that occurred more than four years prior to the filing of the initial complaint was barred by R.C. 2305.09(D). Since appellants' claims occurred in 1991 and 1992, they are time-barred by R.C. 2305.09(D).

■ Moreover, appellants' allegation that their cause of action did not accrue until 1997 when the damages were set at 4.7 percent of their LIFO reserves is not persuasive. It is our view that the "delayed damages" theory advanced in this matter by appellants is a version of the discovery rule. Hence, pursuant to

*Investors REIT,* neither theory is available to claims of professional negligence brought against accountants.

Additionally, the Supreme Court has explained that "[t]he four-year statute of limitations governing such claims in accountant negligence commenced to run when the allegedly negligent act was committed * * *." *Investors REIT,* 46 Ohio St.3d at 182, 546 N.E.2d at 212. Therefore, it is our determination that any negligence that occurred took place in 1991 and 1992. We conclude that the trial court did not err by granting summary judgment in favor of appellees. Given the operation of R.C. 2305.09, appellees were entitled to judgment as a matter of law.

For the foregoing reasons, appellants' assignment of error is not well taken. The judgment of the Lake County Court of Common Pleas is affirmed.

*Judgment affirmed.*

NADER, J., concurs.

GRENDELL, J., concurs separately.

GRENDELL, Judge, concurring.

The majority opinion in *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, mandates concurrence with the majority's decision in this case. However, the concurring and dissenting opinion of Justice A. William Sweeney in *Investors REIT* is more compelling and would lead to a more equitable rule of law in accountant malpractice cases.

Treating one group (here, accountants) more favorably than other groups (physicians, attorneys, etc.) makes no sense and is against the equal protection provision of the Fourteenth Amendment, United States Constitution, and Article I, Section 2 of the Ohio Constitution.

The "court's essential role [is] in ensuring that cases be decided both fairly and equitably." *Investors REIT, supra,* at 183, 546 N.E.2d at 213 (A.W. Sweeney, J., concurring in part and dissenting in part). Unfortunately, this court is not in a position where it can redress this inequity because of *Investors REIT.* Such redress can come only from a reconsideration of this statute-of-limitations issue by the Ohio Supreme Court or statutory modification by the Ohio legislature. Both such actions are strongly urged.