[1] Defendant-appellee CB Commercial Real Estate Group, Inc., also appears as CB Richard Ellis, Inc., in portions of the record.
 DECISION. *Page 3 
{¶ 1} Craig Roberts appeals the trial court's entry of summary judgment in favor of Kenneth Murawski, CB Commercial Real Estate Group, Inc. ("CB"), John Gilligan, Mike McKenna, Keisha Miller, William Schneller, and Charles Male. We conclude that Roberts's four assignments of error do not have merit, and we therefore affirm the judgment of the trial court.
 {¶ 2} From June 1989 to December 1996, Roberts was employed as a salesperson under a Broker-Salesman Contract with CB. On November 25, 1996, Roberts requested that Miller, an administrative employee at CB, route a call from Roberts's cellular phone through CB's phone system to Steve Holter. Holter was an employee of the Galbreath Company, a competitor of CB. Roberts's phone call with Holter was somehow taped as a voicemail on Miller's phone. During the call, Roberts made negative comments about the way in which Murawski managed the CB office and other internal matters.
 {¶ 3} After she heard the recorded conversation, Miller forwarded the voicemail to Gilligan, who, in turn, forwarded the message to Murawski, the office manager. When questioned about the call, Roberts denied it. On December 16, 1996, CB terminated Roberts's employment. The reason given for his termination was his dishonesty about the November 25 call.
 {¶ 4} In 1997, Roberts filed a complaint against various employees of CB, alleging invasion of privacy, wiretapping, negligence per se, and defamation. On November 8, 2001, Roberts amended the complaint to add Murawski and CB as defendants, to dismiss other defendants, and to add claims for breach of contract, *Page 4 
promissory estoppel, unjust enrichment, and wrongful termination. The defendants filed a partial motion for summary judgment, seeking summary judgment on all the claims except the breach-of-contract, promissory-estoppel, and unjust-enrichment claims. The trial court granted partial summary judgment on all the claims identified in the motion except a defamation claim asserted against Rickert. Roberts voluntarily dismissed the claims that had not been included in the court's entry of summary judgment.
 {¶ 5} Summary judgment is proper when (1) there remains no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and with the evidence construed in favor of the party against whom the motion is made, that conclusion is adverse to that party.[2] We review the trial court's decision to grant summary judgment de novo.[3]
 {¶ 6} In his first assignment of error, Roberts now asserts that the trial court erred when it entered summary judgment in favor Murawski, CB, Miller, Gilligan, and McKenna on his invasion-of-privacy claims.
 {¶ 7} We consider first the claims against Murawski and CB. Murawski and CB argued that the claims filed against them were barred by the applicable statute of limitations. We agree.
 {¶ 8} The recording and replaying of Roberts's call, which Roberts claimed was an invasion of his privacy, occurred in November and December 1996. The statute of limitations for an invasion-of-privacy claim is four years.[4] Roberts asserts *Page 5 
that, under this court's decision in Doe v. Archdiocese ofCincinnati,[5] his cause of action against Murawski and CB did not accrue until he discovered that Murawski, in his capacity as a manager for CB, had played the recorded conversation for Phyllis Volan, an employee of CB. But the statute of limitations for invasion of privacy is in R.C. 2305.09 — not R.C. 2305.10, which applied in Doe. Under R.C.2305.09, a limited discovery rule is provided for actions for trespassing under ground, injury to mines, or wrongful taking of personal property. Because invasion of privacy is not one of the actions for which the limited discovery rule is provided, that rule was inapplicable in this case.[6]
 {¶ 9} Roberts also argues that, under Civ.R. 15(C), the amended complaint that was filed in 2001 should have related back to the original 1997 complaint. This argument is untenable.
 {¶ 10} To have his claims against Murawski and CB relate back to his original pleading, Roberts had to meet three requirements: (1) "the amended complaint must arise from the same events which support the original complaint[; 2] the party `brought in' by the amendment must receive, `within the period provided by law for commencing the action,' such notice of the action that the party is able to maintain a defense[; 3] within the same period as provided in the second requirement, the new party must have or should have known that but for a mistake concerning the proper party's identity, the action would have been brought against the new party."[7] "The primary purpose of Civ.R. 15(C) is to preserve actions which, through mistaken identity or misnomer, have been filed against the wrong person."[8] *Page 6 
 {¶ 11} Here, there was no mistake about the parties involved. That CB employees were involved was obvious; Roberts had listed many of the employees in his original complaint. Murawski was one of the first people to confront Roberts about the conversation in December 1996. And when Roberts was terminated, it was Murawski who informed him that his phone call had been recorded. We conclude that the claims against Murawski and CB were barred by the statute of limitations.
 {¶ 12} Even if the claims against Murawski and CB were not barred by the statute of limitations, we conclude that summary judgment was properly granted on Roberts's invasion-of-privacy claims against all the defendants. The Ohio Supreme Court recognized three types of invasion-of-privacy claims in Housh v. Peth: "[1] the unwarranted appropriation or exploitation of one's personality, [2] the publicizing of one's private affairs with which the public has no legitimate concern, or [3] the wrongful intrusion in one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."[9] Roberts's claims were of the third type.
 {¶ 13} Roberts's complaint alleged that CB, Murawski, Miller, Gilligan, and McKenna had "deliberately, intentionally, willfully, wrongfully, and unlawfully" intercepted and intruded upon his privacy. But he offered no evidence that the recording of his conversation on Miller's voicemail was anything but unintentional. And he did not demonstrate that the recording of the phone call and the subsequent playing of it to a limited number of supervisory employees at CB would have caused outrage or mental suffering, shame, or humiliation to a person of ordinary sensibilities. Roberts stated that he could not even recall the conversation. And *Page 7 
according to Roberts's deposition, his humiliation was caused by the culmination of events that led to his termination at CB, not just by the revelation about the phone call. We conclude that, with the evidence construed in the light most favorable to Roberts, reasonable minds could have come to but one conclusion — that he had not demonstrated that the defendants had invaded his privacy.
 {¶ 14} In his second assignment of error, Roberts asserts that the trial court erred in granting summary judgment on his wiretapping, negligence-per-se, and wrongful-termination claims.
 {¶ 15} There is no civil cause of action under R.C. 4931.23, which makes it criminal to "willfully and maliciously cut, break, tap, or make connection with a telegraph or telephone wire or read or copy in an unauthorized manner, a telegraphic message or communication from * * * telephone line, wire, or cable, so cut or tapped[.]" Roberts's claims for negligence per se and wrongful termination stemmed from his assertion that the defendants had violated R.C. 4931.23. But there was no evidence that anybody had willfully and maliciously cut, broken, tapped, or made connection with Roberts's cellular phone. Because Roberts did not present sufficient evidence of a violation of R.C.4931.23, his other claims stemming from that statute necessarily failed. The second assignment of error is overruled.
 {¶ 16} In the third assignment of error, Roberts asserts that the trial court erred when it granted summary judgment on his defamation claims against CB, Schneller, and Male.
 {¶ 17} The trial court denied summary judgment with respect to Roberts's defamation claim against John Rickert, an employee of CB. That claim involved a statement that Rickert had allegedly made to Anita Heisler, who was one of Roberts's *Page 8 
clients. The statement was made in early 1997. For the reasons we have already cited with respect to Roberts's invasion-of-privacy claims against CB, we conclude that Roberts's claim against CB based on Rickert's statement was barred by the one-year statute of limitations. Roberts knew that Rickert was a CB employee, and any cause of action against CB based on Rickert's statement accrued in 1997. The trial court properly granted summary judgment with respect to CB's liability for Rickert's statement.
 {¶ 18} To succeed on his claims of defamation against Schneller and Male, Roberts had to allege and prove the elements of defamation: a false and defamatory statement, publication of the statement, fault, and harm.[10] Under the first element, the statement must be a factual statement.[11]
 {¶ 19} The statements that Schneller and Male allegedly made were opinions, not factual, provable statements. According to Roberts, Schneller had made statements to Samuel Logan in which he questioned Roberts's business ethics, described Roberts as unethical, and "otherwise slandered [Roberts] and [Roberts's] character for the purposes of making money." In his affidavit, Roberts claimed that Male had "said negative things about me, personally, as well as about my professionalism to the effect that I was not doing my job with respect to a CBRE-listed property by giving a `fair shot' at tenancy with Mr. Ratterman's employer." Absent evidence of factual statements by Schneller and Male, Roberts was unable to demonstrate defamation. The trial court properly granted summary judgment to CB, Schneller, and Male on the defamation claims. *Page 9 
 {¶ 20} Roberts's final assignment of error is that the trial court erred to the extent that it dismissed all his pending claims except for the defamation claim against Rickert. This assignment of error is not well taken, as it is clear from the court's entry that its judgment only applied to those claims raised in the defendants' motion for partial summary judgment.
Judgment affirmed.
CUNNINGHAM and DINKELACKER, JJ., concur.
[2] Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
[3] Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[4] R.C. 2305.09.
[5] 1st Dist. Nos. C-030900, C-030949, C-030950, and C-040072,2004-Ohio-7003.
[6] See Herbert v. Banc One Brokerage Corp. (1994),93 Ohio App.3d 271, 638 N.E.2d 161; Squire v. Guardian Trust Co. (1947),79 Ohio App. 371, 72 N.E.2d 137.
[7] Cecil v. Cottrill, 67 Ohio St.3d 367, 370, 1993-Ohio-225,618 N.E.2d 133; Civ.R. 15(C).
[8] Littleton v. Good Samaritan Hosp. (1988), 39 Ohio St.3d 86, 101,529 N.E.2d 449.
[9] (1956), 165 Ohio St. 35, 133 N.E.2d 340, paragraph two of the syllabus.
[10] See Williams v. Gannett Satellite Information Network, Inc.,162 Ohio App.3d 596, 2005-Ohio-4141, 834 N.E.2d 397.
[11] Molnar v. Klammer, 11th Dist. No. 2004 L 072 CA,2005-Ohio-6905. *Page 1